Adrian Ray MOORE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 02A03–8908–CR–355.

Court of Appeals of Indiana,
Third District.

March 12, 1990.

⇐444

Donald C. Swanson, Jr., Swanson & Campbell, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Defendant-appellant Adrian Ray Moore appeals his convictions for rape, a Class B felony, and child molesting, a Class C felony.

The facts relevant to this appeal disclose that in December 1987 A.M. moved with her mother, Kathy Moyer, and little sister into Hallie Girton's home. Kathy Moyer was Hallie Girton's sister-in-law. Hallie Girton had a daughter, B.G. A.M. was twelve years old when she moved in with the Girtons and B.G. was thirteen years old. The defendant, Hallie Girton's brother and Kathy Moyer's ex-husband, moved into the Girton residence shortly thereafter. The defendant was A.M.'s uncle.

Between December 1987 and February 1988, defendant had sexual relations with A.M. and B.G. Defendant was convicted of raping B.G. and molesting A.M.

Appellant raises several issues for our review:

(1) whether there was sufficient evidence to sustain the conviction of rape;

(2) whether the trial court erred in denying defendant's motion for mistrial;

(3) whether the trial court erred in admitting the defendant's statements made while in police custody;

(4) whether the trial court erroneously admitted hearsay testimony; and

(5) whether the trial court erred in admitting State Exhibits Nos. 1, 2 and 3 at trial.

"When sufficiency is raised on appeal, this court may neither reweigh the evidence nor judge the credibility of witnesses. We look to that evidence most favorable to the State and determine whether there is substantial evidence of probative value to support the verdict. If there is, the verdict will stand."

*Buza v. State* (1988), Ind., 529 N.E.2d 334, 338.

Appellant argues that the State did not prove the victim was "compelled by force or imminent threat of force" to be guilty of rape. IND.CODE § 35–42–4–1 (1989 Supp.). Appellant cites testimony of the victim, A.M., to substantiate his claim that the victim was not compelled by force. The flaw in his argument is that appellant was not convicted of raping A.M., but of child molesting. Appellant, however, was convicted of the rape of B.G. and there is substantial evidence that B.G. was forced to have sexual relations with the appellant. B.G. testified at trial that appellant came into her bedroom during the night, put his hand over her mouth and told her that if she told her parents he would kill them.

He then forcibly had sexual intercourse with her and repeatedly told her that he would kill her parents if she told them. B.G. believed the appellant's threats. B.G. testified to one other occasion when the appellant threatened to kill her parents in order to compel her to have sexual intercourse with him.

■ The required force for a conviction of rape by force need not be physical but may be constructive or implied. *Beard v. State* (1975), 262 Ind. 643, 323 N.E.2d 216. It is not required that the force applied be brute strength but may also be accomplished by fear produced by threats. *Dewey v. State* (1976), 264 Ind. 403, 345 N.E.2d 842. There was sufficient evidence for the jury to find that B.G. was compelled by force or imminent threat of force to convict the defendant of rape.

■ Appellant next argues that his motion for mistrial should have been granted. During direct examination of Hallie Girton, the State asked, referring to the defendant, "You've known him—in fact—you grew up with him?" Hallie Girton responded, "Most of my life, but most of his life he has been in prison." The defendant moved for mistrial claiming that the State deliberately elicited the testimony. The trial court denied defendant's motion.

Decisions concerning requests for mistrial are committed to the sound discretion of the trial court. *Jackson v. State* (1988), Ind., 518 N.E.2d 787, 789. Its ruling will be reversed only for an abuse of discretion. *Id.*

■ A mistrial is necessary if the appellant was placed in a position of grave peril to which he would not otherwise have been subjected. The gravity of the peril is determined by the probable persuasive effect of the testimony on the jury's decision. *Id.* A mistrial is an extreme sanction warranted only when no other cure can be expected to remedy the situation.

*Dalton v. State* (1987), Ind., 504 N.E.2d 568; *Jackson, supra.*

At trial, the admission of evidence of prior criminal history is generally considered to be error. However, the statement made by Hallie Girton was fragmentary and inadvertent. There is no evidence that the State deliberately elicited the information. This statement did not warrant a mistrial expecially given the strength of the evidence against the defendant. The probable persuasive effect on the jury's decision is minimal. The evidence was not so close that the jury could have been influenced by the error. *See Jackson, supra.* The trial court did not err in denying defendant's motion for a mistrial.

■ Next, the appellant argues that part of his statement made to police while in custody should not have been admitted. Appellant claims that at one point during the interrogation he no longer wished to answer questions but that the police continued questioning him.

Detective Pyne testified that she began questioning defendant on letters that he wrote to A.M., but when defendant did not want to answer further questions on the subject, she stopped and asked him questions on a different subject. Detective Pyne testified as follows:

"[State/Robert Gevers III:]

Q Detective Pyne, you questioned the defendant about the letters. He admitted to writing one of them as you have testified?

[Detective Pyne:]

A Detective Pyne: Yes.

Q When you read from a second letter to him, what was his response?

A At that time he hung his head and he said nothing. I waited a few minutes and I asked him, I said, 'Are you going to answer me, did you write this other letter?' He continued to say nothing and hung his head. I made the statement to him, I take that as, 'No, you are not going to answer anymore questions about the letters?' He still gave no reply. At the time I continued on another avenue. He started to answer questions again.

Q In between, did he ever say he was not going to answer anymore questions at all?

A No, he never said that.

Q He wanted an attorney at this point?

A No, he did not."

The other avenue that Detective Pyne pursued was to ask defendant if he would give his permission to be tested for chlamydia to which defendant said yes. It is the admission of this question and response to which defendant objects.

In reviewing on appeal the sufficiency of evidence on the voluntariness of a confession, this Court will not reweigh the evidence; rather, the decision of the trial court will be affirmed if there is substantial evidence of probative value to support the finding of voluntariness. *Massey v. State* (1985), Ind., 473 N.E.2d 146. Where an individual has invoked his right to remain silent, it has been held that there is not a per se rule prohibiting the authorities from ever initiating a discussion or further questioning the individual on the subject. *Moore v. State* (1986), Ind., 498 N.E.2d 1, 9. Rather, it must be shown on a case by case basis that the authorities "scrupulously honored" the defendant's right to cut off questioning at any time, and that he knew and understood these rights and voluntarily waived them. *Id.*

Defendant's right to remain silent was not violated in this case. When he refused to answer any more questions regarding the letters, Detective Pyne did not question him further on this subject. Defendant's statement to be tested for chlamydia was voluntarily given. The trial court did not err in admitting defendant's statements.

Appellant contends that during the State's examination of Detective Pyne, the State elicited certain hearsay testimony of the jail nurse.

"[State/Robert Gevers III:]

Q What did you ask the nurse?

[Detective Pyne:]

A I asked the nurse to test this person for chlamydia—asked her to do the testing—it was refused. He would not give his permission once the nurse—.

[Defendant objects.]

\*      \*      \*      \*      \*      \*

Q Detective Pyne, to your knowledge, was that test ever done on the defendant, Ray Moore?

A To my knowledge, it was never done."

Detective Pyne testified to her knowledge that a chlamydia test was never given to the defendant. This testimony did not constitute hearsay.

For appellant's last argument, he contends that the State's Exhibits Nos. 1, 2 and 3 were improperly admitted. Appellant alleges that the exhibits were irrelevant and should not have been introduced into evidence during Hallie Girton's testimony.

" 'Evidence is relevant if it is material to an issue in the case and tends to make a desired inference more probable.' *Smith v. State*, (1981) Ind. [275 Ind. 642], 419 N.E.2d 743, 746. 'Any evidence that connects the defendant with the crime is admissible.' *Warfield v. State*, (1981) Ind. [275 Ind. 396], 417 N.E.2d 304, 308. 'Evidence having some tendency to prove a material fact is relevant.' *Turpin v. State*, (1980), Ind. [272 Ind. 629], 400 N.E.2d 1119, 1122. 'Evidence is relevant if, in the light of general experience, it logically tends to prove or disprove some issue of fact.' *Irons v. State*, (1979) Ind. [272 Ind. 287], 397 N.E.2d 603, 606. This Court has held the trial court is accorded wide latitude in ruling on the relevancy of evidence. *Begley v. State*, (1981) Ind. [275 Ind. 235], 416 N.E.2d 824; *Snider v. State*, (1980) Ind. [274 Ind. 401], 412 N.E.2d 230. If the evidence only inconclusively connects the defendant with the crime, this goes to the weight, not the admissibility, of the evidence. *Johnson v. State*, (1980) Ind. [272 Ind. 547], 400 N.E.2d 132; *Crosson v. State*, (1978) 268 Ind. 511, 376 N.E.2d 1136."

*Armstrong v. State* (1982), Ind., 429 N.E.2d 647, 651.

Exhibits Nos. 1, 2 and 3 were letters that the defendant wrote to A.M. between December 1987 and February 1988 that evidenced his sexual feelings towards her. The letters corroborated the testimony of A.M.

Appellant complains that the letters should not have been introduced during Hallie Girton's testimony. Before Hallie Girton testified, A.M. had identified the letters as those written to her by the defendant between December 1987 and February 1988. Hallie Girton then testified that she recognized the handwriting on the letters as that of her brother's, the defendant's. She stated that A.M. had brought some of the letters to her and that she had found some of them. A proper foundation had been laid for the introduction of the letters, Exhibits Nos. 1, 2 and 3, into evidence.

Affirmed.

SHIELDS, P.J., and STATON, J., concur.